case number 20-5292. Domingo Henry Quinn Gomez, a lawful permanent resident of the U.S. et al., 3Q Digital et al., at balance, versus Donald J. Trump in his official capacity as president of the United States of America et al. Mr. Welton for the at balance, Mr. Glover for the appellees. Good morning, counsel. Good morning, your honors, and may it please the court. Cleland Welton for the plaintiffs. The proclamations at issue in this case have massively disrupted the immigration system for more than nine months. They prevented hundreds of thousands of families from reuniting, they have functionally canceled more than half the diversity visa program, and they've prevented tens of thousands of American businesses from hiring foreign workers, even when those workers are legally prohibited from competing with U.S. citizens. The president's authority under section 1182-F is not unlimited. The statute does not authorize the proclamations in this case. First, the proclamations do not satisfy the expressed prerequisite to find, as a matter of fact, that permitting immigration would be detrimental to the national interest. The proclamations are based on irrational and plainly false conjecture that does not rise to the level of a finding. Boyd, can we separate those two for a minute? Let's separate. You use, you use words like rational and supported by evidence. And that sounds like APA review. So, I mean, that's not consistent with what the court said in Trump versus Hawaii, right? Well, Your Honor, we think that the word findings needs to have some meaning. Right. I get your point about false. I get that. And I understand your argument that obviously, if it's false, it can't, it can't be an adequate finding. But I'm just asking whether, whether you can really go so far as your language does rational supported by substantial evidence that just you're turning this into an APA case, which this clearly isn't that. Right. Your Honor, we're not asking for. So how do you how do you define the standard here? I mean, well, let me ask you this. Suppose, suppose we didn't agree with you that, at least say with respect to immigrants, as opposed to nonimmigrants that the that the findings were false. Suppose we didn't think they were false. What what's how would we evaluate them? What lens would you argue that we look through? May I just clarify, if you do not think that the findings were false, what would you look? Yeah, no. If I think if I think with respect to immigrants, immigrant visas, that the findings are not false, what how do I evaluate? You still would argue that they're not adequate findings, but what's the standard if it isn't rational and substantial evidence? How do we? Your Honor, we would think that at least as to a subset of those individuals who cannot compete, cannot be expected to compete with foreign, excuse me, with U.S. workers that they they're irrational and they don't make it. But that's that's the nonimmigrant category, isn't it? In part, but also with respect to the immigrants, there are, for example, minor children who are barred from entering the country to their parents. Good. I take that point. I take that point. But but OK, let me refine my question with respect to immigrants who under the INA are not blocked by the kinds of provisions that that limit the immigration of nonimmigrants. What about those? Well, here, let me just let me just let me just ask you this. OK, so so. The president said he says the government says that this respect to immigrants just get that with respect to given the current emergency, the suspension will ameliorate. U.S. unemployment in some measure. That's that's their argument. That that's their position. What's the argument for us setting that aside? Well, your honor, there's there's no evidence and there's not even any rational explanation of how he reached that quote unquote finding on that same page of their brief. They they agree with us that immigrants contribute to economic growth and thus to the jobs and wages of U.S. workers. They agree that that's true in the ordinary course and they don't offer any evidence. And even if you think that asking for evidence is too much, they don't ask offer even any rational explanation of how how things would be different in the context of a recession. And we have piles of evidence that is unrebutted that shows that even in a recession, adding immigrants, adding nonimmigrant workers to workforce is is good for the economy. It adds jobs, adds demand. And so it doesn't square with the way the the economy works. And they haven't put out any evidence in favor of the government in favor of the president's finding and put on the evidence contrary to what we have in the record. And so it's it's false, but it's not just false, but irrational and reasoned. It isn't. Oh, go ahead, Judy. I'm sorry. Okay. So are you suggesting that some sort of factual predetermination is required as existed in Trump v. Hawaii, so that while ultimately the president could reach the conclusion he reached? There has to be some evidence to support it. I'm a little concerned about the requirement that the president has to explain how he reached the decision, because I thought the Supreme Court pushed back on that fairly hard. Your Honor, with respect to the latter point, the Supreme Court was, I thought, clear in Hawaii saying that he's not required to link his every piece in the puzzle in the specific context of foreign policy, national security. And there are reasons for that. The president has his own power in that area. He probably shouldn't be required to disclose confidential information, state secrets, etc. in that context. But in the purely domestic context, there's no reason not to ask him to explain his findings and give a reason for them. And in fact, Congress put the word fines into the fines instead of deans, specifically so that he would have to base his entry suspension on some facts and not on an opinion or a guess. And what he's done here is he's just made an opinion or a guess about what might happen in the case of a recession. He's admitted that we're right in the general course, but he hasn't put in anything to support his attempt to distinguish the recession context from the ordinary one. And so there's no rational connection between the facts that he wants to rely on and the finding of a detriment that he purports to have made. By the way, the December 31 proclamation, that expires March 31st? Yes, Your Honor. So if that happens, is this case in moot? At that point, it would likely become moot with respect to most of, at least the appeal will be moot with respect to most of the plaintiffs. The problem though, is that our diversity visa plaintiffs, they receive their visas in September and they only last for six months. And so they would all expire by the end of March. And so they need to come in and it's not clear that they can be renewed. And so they need to come in on their visas before the end of March. And so the proclamations need to be lifted one way or the other in order for them to use the visas that they have, or they may well be out of luck. Wait, I lost you. I just didn't get that. If the proclamation, oh, you mean they may have to use them before March 31st? Yes, Your Honor. So they have their visas, the diversity visa plaintiffs, and some of the class members have their visas, but they only last for six months. Okay, but that issue, they'd have to go back to the district court on that, right? Well, not for them to be reissued, yes. But what we're asking for is for the proclamations to be lifted. And if they're lifted, if they're enjoined, then the plaintiffs could come in on their visas that they have. No, but I'm asking you what happens if we don't decide this case before March 31st? If that were to happen, the issue about the proclamations would, and they were to expire, they would become moot. And yes, they'd be moot. Yes, as to the proclamation, we would have to seek additional relief to get the visa reissued. Yes, okay. Thanks. I'm just circling back. I just wanted to make another point with respect to the findings issue. I think that one way to look at this is that the president, there's got to be some floor above which the findings have to satisfy, right? Otherwise, it wouldn't be a finding. And the president couldn't, for example, find that all foreigners are criminals, and therefore, I'm going to exclude all aliens from entering the country. That wouldn't constitute a finding. It would be just made up and just contrary to all the evidence. And that's really the situation that we're in here. The president has not given any support for his findings, and he's not explained what he's done, not given a justification for it. You face a steep mountain to climb with the Trump decision. It's unbelievably deferential, suggests that the president has to do great deference and suggests that there is statutory support for that. And it's a situation, if I'm understanding you correctly, I think what the best reading for the president's side of this is that they're saying that in the aggregate, there's persistently high unemployment. When there's persistently high unemployment and supply outpaces labor demand, in that situation, which is dire, we can act to block any competition, even though there are individual employment sectors that might not fit it. Because there are workers there who really may not compete against American workers, but we don't have to go to that detail. And this is our theory, this is our policy. They as high as it is, it is okay to block a group that potentially competes, and they do compete in certain areas for sure. It is okay as a matter of policy for us to do it, even under APA terms. We allow an agency some room to move. I know this is not an agency. We allow an agency some deference in saying that's our prediction. Well, your honor, the problem is that there's evidentiary basis for that prediction. I don't want to say that the president has to provide evidence in every case. Well, wait, for which prediction? For the prediction. Sorry, let me step back. There's no evidentiary basis for the conclusion that admitting immigrants in particular would exacerbate the unemployment issue. Well, but the immigrants in certain areas will certainly compete against American workers. They're not wrong on that. I think your argument is they're not showing that in every sector. And I think that's certainly true. You hear that over and over again. I don't know what the exact details are. It is true that in some sectors, immigrants really are not competing directly against American workers. And your argument is, well, that can't adversely affect the unemployment situation. But I think what the president's side is saying, the aggregate numbers are sufficiently severe. We can take an approach which says we're not going to allow competition in at this point. Well, your honor, there's two points. Many of the immigrants here are going into sectors where not only don't they compete, but their unemployment has gone down. For example, H-1B visas, unemployment has gone down because those are- I agree. But what I'm asking you is, is the president required to go through each and every employment sector and say, we're making the determination in all of these areas and we support it with facts? Is that what you're saying? I'm not reading the Trump cases suggesting that. Well, what we're saying is, number one, he's got to make findings with respect to each class that he's excluding. And so he's got to make findings with respect to H-1Bs because that's a class he's excluded. But then more broadly, he needs to have a rational basis to conclude that the individuals who are coming in are going to actually not just compete, but impact and cause more unemployment to exist. But suppose the response from then is, that is our theory, that it will have a positive effect. We can't tell you for sure, but that is our theory. And we see lots of cases like that, certainly in the APA arena, and the agencies are allowed to have their own foundation. That is, the numbers are wrong in our view. And we think that the best way to protect the class who we're trying to protect is to avoid all competition. Even though we understand that in some places, there might not be competition. Well, Your Honor, the problem for the government there is that the statute doesn't allow the president to proceed on a theory or on a guess. He's got to have a finding. And that has to be a finding of fact, and it can't be a mere guess or an opinion. And so without a finding with respect to the particular issue that there would be an actual detriment, he hasn't satisfied the statutory prerequisite. Okay. All right. I'm sorry? No, go ahead. I'm listening. I was just going to add that even if the findings were satisfied, beyond that, he's violated the statute because he has exceeded the authority that Congress gave him by overriding the various statutes that authorize the visa programs that are at issue. He's thrown out the J visa program, the H visa program, all the immigrant visa program, and he's just not allowed to do that. He's allowed to supplement some restrictions that Congress may have enacted, as he did in Hawaii, but he's not allowed to just take out visa categories wholesale, which is what he's done here. And then what are you relying on to support that claim? It's Hawaii, the language in Hawaii supports that, and then subsequent decisions, the Ninth Circuit said, the state panel decision in Doe and subsequent district court decisions in- I think the later Ninth Circuit opinion does not support that. Well, to be clear, the later opinion does not, but the Ninth Circuit has really split 3-3 on this issue. There were two judges on the majority on the stay, and then there was the Judge Tsushima's dissent in Merritt's opinion. And so there's really a division of authority even within the Ninth Circuit, and that opinion is still subject to a rehearing petition. So in our view, the more persuasive authority is the stay opinion and then the subsequent decisions in the National Association of Manufacturers case, which says that the president is not allowed to throw out, not allowed to eviscerate the statutory scheme by throwing out these whole visa categories. The other thing I would say is that the opinion in the proclamation in Doe did not throw out whole visa categories. It put on additional limitations, similar to what the president did in Hawaii. Here, it's different. The president has not added new limitations. He's thrown out entire visa categories, and the statute doesn't allow him to do that. And if it did, it would create a serious non-delegation problem because it would allow him to act contrary to Congress's will and without any congressional guidance as to how he is to do that. I think my time has expired if there are further questions. Judge Tatel, did you have a question? No, I didn't. Thank you. All right. Thank you. Let us hear from counsel for at police. Good morning, excuse me. Good morning, and may it please the court. I'm Matthew Glover, and I represent the United States. COVID-19 has had an unprecedented and devastating impact on the United States and the United States labor market. COVID-19 has caused a genuine national emergency and put millions of Americans out of work. The presidential proclamations at issue here are a response to that emergency. The president appropriately exercised his authority under Section 1182F, and the district court correctly found that the proclamations are lawful. This court can affirm either on the threshold ground of non-reviewability or in applying the extremely limited and highly deferential review of the proclamation that the Supreme Court laid out in Hawaii. Well, non-reviewability wouldn't be consistent with Trump v. Hawaii, would it? Your Honor, I would disagree. If you look at Roman II of the opinion in Trump v. Hawaii, the Supreme Court described the government's non-reviewability argument there, which is the argument we make here, as I think it was a difficult question or a tough case. I can get the exact language for you if you'd like. Right. It said, sue. And so it said in light of both the concession by the Solicitor General and argument pointing to the prior opinion of Sayle or Sally, I'm not sure how to pronounce that, that because non-reviewability was non-jurisdictional, it could proceed to the merits applying the test it laid out in Hawaii. So I don't think ruling in the government's favor on non-reviewability here would conflict with Hawaii. It would just be taking a different approach than the Supreme Court took in Hawaii, because the Supreme Court didn't lay down a position on non-reviewability in Hawaii, if I understood your question correctly. Go ahead. So what's your alternative basis for affirmance? The non-reviewability argument in our brief, that as the Supreme Court explained in the- No, no, no. Not the non-reviewability. What's your other basis for- In other words, if we think there is some judicial review- I apologize. Applying the extremely limited and highly deferential review of the proclamation that the Supreme Court laid out in Hawaii. And I was confused when you said alternative basis, because that's the basis that Judge Maida gave in his opinion. And so that would be affirming for the same grounds that he provided. So would you like me to start there with the Hawaii application? No, let me just ask you this. Okay, let's assume you're right that it's extremely deferential. I mean, you obviously are right about that. Suppose the findings are false. Your Honor, a couple of points- I'm not suggesting- This is separate from the question of whether they are. In fact, take Mr. Welton's hypothetical. I mean, suppose the President issues a proclamation banning all immigrants because crime rates are increasing and because immigrants are likely to commit crimes. Now, that's false. We know that's false. Suppose that was this case. Is your position that we couldn't- that we would have to- that we couldn't second guess that because it's false? So we would have the same non-reviewability argument? No, no, no. We're moving beyond that. We're beyond non-reviewability. Okay. I just wanted to open by saying that would be- We understand. Trust us. We know you would open that way, but let's go on. Understood. I just wanted to make sure that I didn't sound like we would waive that argument. No, no. Kelsey, you're wasting time. Come on. My apologies. I think in that case, you might have, even under the limited review, it might be a truly false, purely incorrect finding, but we are far afield from that. And I would point out that in most of these cases, certainly in this proclamation, you're talking about a predictive judgment. I think Judge Edwards used a phrasing similar to that. You're predicting whether after entry, this will have a negative impact on the national interest because the proclamation is suspending entry. And so here we have- Well, some predictions can be positively wrong if they're premised on assumptions that are absurd or factually unsupported. So, I mean, that's kind of what you're struggling with in this case. There are certain employment sectors. I don't think anyone would disagree. There are certain employment sectors where there is not a direct hit on American workers if you bring in immigrants or non-immigrants. I mean, we've known that for a long time before COVID. And so the question is, must the president take account of that? That is that some of those assumptions are simply wrong. Or is it enough to say there are enough places where the hit will be detrimental, and so we're not going to worry about the particulars? So I think here, we're in the midst of an unprecedented pandemic and an unprecedented shock to the labor market. And I think the president has the authority to make determinations about- He says in the proclamation in June that after consulting with the secretaries of labor and homeland security, they found that the president admission of workers within several non-immigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current economic recovery. And they set the proclamation to those categories. But I think the tailoring that your question suggests is seen in the exceptions, right? The president directed the secretary of state in conjunction with the secretary of labor and secretary of homeland security to issue a mechanism for national interest exemptions for those individuals that it's shown, barring their entry, wouldn't be against the national- Really? What kind of exceptions have been put into play? I read that as being unbelievably narrow and not likely that we'll see it employed, but what are we talking about? So in August, the state department laid out a series of things. One that I would use, I think, because it's kind of a clear and easy example. And I think it's actually the first one on the state department webpage is the H-1B category covers a lot of things, including medical professionals. And so the first exception there is for travel as a, I guess they don't use medical, sorry, but as a public health or healthcare professional or researcher to alleviate the COVID-19 pandemic or to conduct ongoing medical research in an area with a substantial public health benefit. And the example they give there is e.g. cancer or communicable disease research. This includes those traveling to alleviate the effects of the COVID-19 pandemic that may be secondary of the pandemic. And the example they give in a parentheses there is travel by a public health or healthcare professional or researcher in an area of public health or healthcare. It's not directly related to COVID-19, but has been adversely impacted by the pandemic. So that's a good example of, you need all hands on deck to help fight the COVID-19 pandemic, barring H-1B visa holders who would be in these medical fields helping to fight the pandemic or researching and helping to get to- Okay. What about in the H-2B category, where even before COVID, there were lots of areas and employers and workers would attest to it. Lots of areas where for any of a number of reasons, the employers could not get adequate labor. They continued into COVID for sure. And so there was no competition when you brought in these non-immigrant H-2B persons to perform that work because otherwise it wouldn't get done. So the exceptions there, I'm happy to walk through all of them. The first one is travel based on a request from a U.S. government agency or entity that meets a critical foreign policy objective or to satisfy a- No, no, no. I'm talking about, let's go to nitty-gritty employment that you and I understand. There are a lot of employers across the country in the H-2B category who's saying, you're killing us. Okay. So there are three additional factors you need to meet, two of them. So the first of those would be travel when the person was previously employed and trained by the employer, and they've previously worked for the petitioning employer. That's one of the- You need two out of these three. The second one is the applicants traveling based on a temporary labor certification that the Department of Labor gives that reflects a continued need for the worker, and it needs to have been approved by the Department of Labor after July, 2020. So approved after the pandemic has caused this shock. I think that's the example you're giving me, Judge Edwards, is even post-pandemic, you're causing the shock. And the third would be the denial of the visa would cause financial hardship to the employer. Examples given would, illustrating why the hardship is difficult if the employer can't meet a financial or contractual obligation, its inability to continue its business. So I think the example you were giving me where you couldn't find anyone to fill this job without this H-2B person, and you can show that this is going to be a hardship, we need someone, that would meet that second one. And I think you would get a labor certification after July to meet the first. So that's the H-2B exemptions. And I think that those show an attempt at narrow tailoring. If I can step back and just say- Can I interrupt? I'm afraid, I don't want to repeat the question Judge Edwards asked, but maybe I'm asking his question slightly different way. The proclamation prohibits non-immigrants from entering the country because of their impact, because they might take jobs from Americans, right? That's what this is all about. Or impact wages. I apologize for interrupting. Yeah, yeah, yeah, I get it. No, no, no, I get it. Or working conditions, sorry. But they can't get H-1B or H-2B visas if that would happen under the INA. In other words, the employers have to certify that bringing someone in on an H-1B or H-2B visa will not have an adverse effect on domestic workers. So I don't understand how the president can find that, can bar people eligible for H-1 or H-2B visas, because they're already blocked if they would have an adverse effect on domestic workers. I see that I might, I'm over time. Yeah, please, what's the issue? The first would be the president in the June proclamation specifically stated that in the normal labor market, he understands that the labor certification would cover that. But given the shock of the pandemic in COVID-19, the labor certification may not. That makes no sense. The employer, the employers to be able to bring in an H-1B or H-2B applicant must certify that it won't have adverse impact on domestic. Because of the COVID and the dire employment situation, I assume that under the INA, it will be really, really hard for an because there's so many unemployed Americans. What am I missing? I think that that goes to the labor certification occurring July or later, as one of the grounds for which you would be able to get a national interest exception, because that labor certification has taken account of the unemployment that COVID caused. A labor certification granted in March would not have taken account of the labor market in June when president issued his proclamation. And after COVID, it had a devastating impact. So I think the national interest exceptions actually work sort of directly with what you and Judge Edwards have been asking me about for these labor certifications. If I could make a second point on this, and that's- I want to just piggyback on something here. In other words, even though Congress has already set limitations, quite specific, the proclamation says, essentially, COVID, we want to redo the scheme. And we're going to bar everyone. And the agencies can come up with guidance as to the exceptions. So the burden and the power has shifted. And the question is, can the president do that under the authority he cites? And I say that in the context of, I certainly agree that Trump v. Hawaii makes very clear the limited scope of any judicial review, assuming such exists, at least in an international context. But in that case, there was this extensive report that set out the factual basis for the finding. And that's what's troubling to me here. Can you just act on the basis of a common sense assumption here, essentially, look, we have a pandemic, there are lots of people unemployed. And while there are other ways to address that, and we can go to Congress regarding that, instead, we're going to issue a proclamation and redo the scheme. And you say this is unprecedented. Well, there have been pandemics, you know, there's been recessions, depressions before. So why isn't this an extraordinary situation way beyond what the Supreme Court was dealing with in Trump v. Hawaii? And that's leaving open the question. We have to be clear about this as to whether or not it's rational or reasonable to do what the proclamation did. I'm just trying to understand that. Do you just say as the majority in the Ninth Circuit went one way and the dissent went the that there is some limitation here. And we're talking domestically now we're not talking with regard to the international implications. And you don't think any of that is relevant here. So I think there's a lot to unpack in that question. I'll start with the last point. We agree with the Ninth Circuit that there's no distinction between domestic and foreign impacts. I think the text of the statute talking about the ability to suspend when you determine entry because entry is what you're suspending when it would not be in the national interest. Given that you are stopping someone from entering the United States, some of that harm to the national interest may naturally occur in the United States. The second point I would make on that is, you know, as the Supreme Court said in Fiallo and they followed up in Hawaii, any policy pertaining to allowing or not allowing foreign nationals to enter the United States is I think the line was inextricably intertwined with our foreign relations. And we bar entry of workers in these categories. Other countries might bar entry of American citizens from being workers. And so barring the entry of foreign nationals is always going to be tied up with our foreign relations. I think about the factual basis that the Supreme Court had. So in Hawaii, the Supreme Court noted that the finding there was far more robust than in many proclamations. It pointed to a couple of proclamations that had a paragraph or a very short finding. Here we do have a couple pages of findings. You know, I discussed before a little bit the president laid out that more than 20 million U.S. workers lost their jobs in industries where employers were requesting H-1B and L visas. And so here you had a lot more findings than you've seen traditionally in proclamations. I think you also mentioned redoing the scheme. Textually, under 1182F, the president could bar all entry of all immigrants. And doing so would obviously cut off all immigrant classifications and all categories. And so the statute allowed- For any reason, that's what we're trying to understand. No, no, I wasn't talking about- Just besides today, he doesn't want any more immigrants coming into the country, period. We're talking about detrimental to the interest of the United States. The question that leaps out on the H-2B, for example, Congress has already accounted for detrimental in one respect. That is, if unemployed persons capable of performing such service or labor cannot be found in this country. That's the condition. Now, other things that are detrimental to the country, the president obviously may be able to address under a proclamation. But what we're trying to understand is why can the president override what the statute already says with respect to H-2B, for example, non-immigrant aliens. If the employer has to make that assertion, why isn't that the end of it? You can't say that same thing is detrimental to the interest of the United States. That thing, the unemployment, it's already been accounted for. Your Honor, a couple of- I understand the statute, the INA sets forward provisions for H-2B, labor certification, et cetera. It also provides the president to suspend entry. And as the Supreme Court said in Hawaii, it can impose restrictions in addition to those already in the statute. That would be detrimental to the interests of the United States. And what we're saying is how can they be detrimental to the interests of the United States with respect to this one point when the statute, and there's nothing that's changed, already takes into account unemployed persons? The president is making a predictive finding based on the changed circumstances of our labor market. No, it's what Judge Tatel started with 15 minutes ago. We're going around in circles. It's bizarre. Congress has already made, with respect to one detrimental circumstance, Congress has already said the employer has to show that unemployed persons capable of performing such service cannot be found. All right. So we've accounted for that. And so why should the president be able to come back and say, no, just ignore that. Now we're barring everybody, but we'll make exceptions. And then you go back and try and redo some of what's in H-2B and switch the burden to prove. Your Honor, a couple of points. Again, I think the temporal lag between when the employer makes that certification and when the visa is issued is something that the president was addressing in June. And it's something the secretary of state has addressed in the requirement that the certification... What is that? Could you just say that once more? What's the temporal gap? So to get an H-1B visa, as the example is, or maybe H-2B, if Judge Edwards was asking about that, I can't recall. H-1 and H-2 both require certifications. So it's the same answer for both. The employer applies to the Department of Labor for a certification. They get a certification. And that occurs before the visa applicant is then adjudicated by the Department of State. And so there's going to be certification at time one, and then the application is occurring at time two. And so in the proclamation, when the president mentioned that in normal circumstances, the certification has taken account of our current economic situation, we had a shock in mid-March to the labor market and a continuing shock. And so the certification that had occurred before then wouldn't have taken account of that shock. Why couldn't the proclamation have just been... The easy way to solve that problem is to just limit the proclamation to all certifications issued prior to the proclamation. After any certification after the proclamation is obviously going to take account of COVID and the collapse of the economy because there'll be more Americans looking for jobs. There'll be no lag. In other words, it could have had a very surgical answer to this question, but instead, all non-immigrants have been barred, regardless of whether their entry into the country would... A couple of points to that. The first one, and I apologize for not having mentioned this earlier, but even in spite of the labor certification, this court held in Save Jobs USA versus Department of Homeland Security, that the plaintiffs there stating that they had been replaced for their computer jobs by H-1B recipients, and the government's defense was that they're not competing. It was a competitor standing case because the US citizens can't compete with H-1B applicants. And this court said that even in spite of the labor certification process, it might not be But so this court said there that at least there was a factual scenario where people, US workers were competing with H-1B workers, but the president gave the Secretary of State authority to find these cases that I think you're trying to drill down on, where allowing entry would not negatively impact the national entry. Maybe we're going in circles. My point, and Judge Edwards' point, is Congress has already done all that. Yeah, that's my point. Congress has already addressed it, and we're sitting here going in circles and not understanding the answer. If Congress hadn't addressed it, it has addressed it. And you're saying your only answer, as far as I can tell, is that there is a temporal lag, and that justifies the president essentially overriding the congressional directive with respect to certification. I'd like to make two points that I think it sounds like I haven't gotten across in previous responses. The first is that the Supreme Court assumed in Hawaii that there might be some issue of conflicting or overriding the INA, but made clear that 1182F, which is also part of the INA, allows you to impose restrictions in addition to what already exists. And so when the president imposed restrictions on the entry of H-1B people, those were in addition to the process, the labor certification process we've been discussing, that already exists in the INA. I don't know how there can be additional restrictions when the original right is taken away. That's what we're trying to get you to address. So, Your Honor, I would quibble a little bit with your description of the original right there. Well, they can't come in. They can't come in. I don't, I think it would be very different if there were a provision of the INA saying, you know, we shall permit in the, you know, people who, rather than a permissible process for applying and being permitted to receive a visa. But the, I don't read the INA to say you must allow in, you know, without other limitation or without 1182F providing the president additional authority. I think if they're right, we get your point. Go ahead. I'm happy to discuss non-delegation. I think opposing counsel mentioned it briefly, but I'm also happy to rest on the papers on that. Before you, I was going to ask you about non-delegation, but am I wrong? In Trump v. Hawaii, didn't the court assume that an 1182 proclamation cannot override other provisions of the INA? It can supplement them, but it can't assume that you could make such a claim. Well, we are a lower federal court, right? It says we assume that they can't override. So we can make the same assumption here. And the plaintiff's argument is this isn't a supplement to the INA. This is overriding it because it is actually overriding the actual provisions that Congress put into the statute to protect domestic workers. And you say detrimental to the interest of the United States. And what we're saying is Congress already addressed that, for example, in the H-2B, that what's detrimental to the interest of the United States is whether they're unemployed persons who will or will not take the job. They've already addressed it. And we're asking, well, how can the president say, no, no, no, no, we're just going to assume that doesn't exist and here's the way it's going to work. So we don't get that. I would have two textual responses and I'll apologize if I've made them before, but in 1182F, Congress also provided the president authority to bar entry. And of all aliens, if he barred entry of all aliens, that would override in the plaintiff's terminology, all classifications for which someone would be permitted to enter. And it also allowed him to specify classes and specifying classes based on the visa classifications is a perfectly logical aspect of that would be my first point. The problem you have is, you know, I hear that. And I think instinctively, that's what you would assume. But the problem you have is you're saying, but look, we have exceptions and the exceptions do exactly. You go back and try and redo what Congress has already done. And it's not, it doesn't make any sense. So you're essentially agreeing that you can't in any way support or not in any way, you can't really support your assertion that there is an unemployment hit here because you're agreeing. We have exceptions that'll do exactly what H2B allows, which is allow the employer to certify. Your honor, I apologize if I've been unclear, but I don't mean to agree with that. I was taking, I had understood you and judge Tatum in both laying out your hypothetical to say when the person will clearly not compete. I do not agree. The president made findings after consulting with the secretary of labor Homeland Security, that allowing non-immigrants in these categories would not be in the national interest. He also gave the authority to the secretary of state to outline circumstances in which allowing entry would, or I don't hate to use the double negative, but would be in the national interest or would not, not be in the national interest. Would not be in the national interest because, the because is the point. It's because it would cause continued or exacerbate unemployment problem, right? Yes. And what we're saying is that appears not to be accurate. And, or if there is an issue, Congress already dealt with it. And so why do we need the president under 2F to say anything on that point, the unemployment hit? It's already been spoken to. So on the second point about the Congress having already dealt with it, Congress also dealt with a pandemic or a war by giving the president authority to temporarily suspend entry of certain people. And that, so this is the president carrying out that delegation from Congress. And so that would be my response there. Sorry. No, no, go ahead. No, I was just saying as to the exceptions that shows an attempt to narrowly tailor the proclamation to those, you know, to the employment harm. Okay. All right. Any further questions? No. Thank you, counsel. All right. Counsel for Appellant, give you a couple of minutes. Thank you, your honor. I thought it was interesting and that counsel conceded that a purely incorrect finding could not be upheld. And as I think the panel recognizes the findings here are purely incorrect in several respects. Well, he conceded that only with respect to his second argument, not, I mean, I take it his first argument is that it's unreviewable no matter what, but you don't agree with that, obviously. Certainly not. No, your honor. I think it's clearly reviewable. The non-reviewability decisions that they rely on don't apply in this context. Those are about reviewing the president's discretion. Go ahead. I didn't mean to interrupt you, but a purely incorrect finding can't be upheld because it wouldn't be a finding. It would just be made up. He pointed out that or asserted that the recession here is unprecedented, but as Judge Rogers pointed out, that's just not true. Recessions happen all the time. There was one in 2008. They happen frequently. Congress was surely aware that recessions occur when it wrote the INA. It clearly considered economic implications of what it was doing in 1990 when it enacted the immigrant visa provision. But you don't even have to make that argument. With respect to the non-immigrant visas, if there's a recession, there'll be fewer certifications, right? That's built into the law, correct? Exactly, your honor. And a key point here that... What about his argument about the timelines? Well, that's what I was just getting to, he's mistaken on a number of fronts, one of which is that H-2B visas, the certifications happen every six months. So the most recent ones would have been in October, this past October, and the one before that would have been in April of last year, both of which were during the pandemic. And so any certification that would have happened before in the period immediately before the June proclamation would have accounted for the pandemic. And any certifications that were made in October certainly would have accounted for the pandemic. So it doesn't make any sense for them to say there's a detriment to the national interest based on those. And with respect to, for example, H-1B visas, the requirements there with respect to the prevailing wage rate that must be paid, the employer must certify that and they must continue paying that providing the benefits and so on that it's certified throughout the employment period. And so it's not that the certification happens once and then it's over. Yes, they have to continue doing that throughout the entire period. So the temporal lag argument really does not... Let me ask you this. You have two basic arguments here. One, that this is not an adequate finding because in your view it's false. And also because it overrides the INA. Those are two independent arguments. Do you have a view about which is stronger from your perspective? I obviously think that they're both quite strong. The findings argument... Which is most defendable on appeal from here? It's a difficult position you're putting me in. Defensible. I don't mean defendable, but defensible on appeal. There's a clear textual hook for the findings argument. The president has to find a detriment to the national interest. But of course, when you look at that, you're immediately walking into the realm of what's our standard of review. Whereas with the override, it's just a question of statutory interpretation, right? Does this or doesn't it override the statute? Right. Yeah, you're right, Your Honor. And then we'd have to get into the question of what the matters all that much here, exactly how you articulate it, because he's conceded that a false factual finding... Well, that depends on... That only becomes easy if we agree with you that it's false. If it's something between... If it's not false, but still something else, but not APA review, but not false, then what do we do? Well, I don't think it even needs to be as searching as APA review. There's no... No, I said less searching. It can't be as searching. Oh, I'm sorry. That's hardly searching at all. I'm sorry. I've sort of lost the thread of the... Oh, no. Okay. I'm sorry about that. Yes, that was my fault. My question is, how do you make your case if we don't think it's false? But we still think it's questionable. Well, so there's two things. It's not supported by anything in the proclamations. There's no justification or explanation for what he's done. It's contrary to the INA, which makes the finding false, but then at the same time, that puts it in conflict with what Congress has done and Congress's judgments about how these programs... Well, that's your override argument, right? Right, Your Honor. Aren't the two of them... The two of them are awfully related to each other, aren't they? Yeah. I mean, it's not really... They're not really separate arguments. It seems to me your argument that these findings are false is based on the fact that the INA already takes care of this stuff, right? Yeah. In part, that's true. Okay. I thought the distinction was where if we get beyond the government's first objection to our reviewability, if we get to what is our limited reviewability, we don't have to get into this sensitive area of what is an adequate finding, how much evidence does the president have before him, what does he need for a rational prediction? And we've gone through a lot of that. And then the other one is, well, if Congress has already taken care of the labor market considerations, does Congress have a path for the court, a lower court? And I suppose the response is, yes, but that only takes care of part of my appeal. Well, I would say that Congress has taken care of the labor market considerations with respect to the entire class, not just part of it. It's more explicit with respect to the non-immigrant visas, but Congress did take into account labor market considerations. It's quite clear from the legislative history that we cited in our brief, they lay out the considerations that they took- So let me just press you a little bit so I understand. Suppose you're president and you have an economic calamity on your hands as a result of a pandemic. And you're trying to figure out what to do on a temporary basis. And you decide, let's just maintain the status quo for 60 or 90 days. No authority to do that. Well, Your Honor, the status quo would be to continue allowing the visa programs to operate and for those people to come in. And I would point out that to deal with the pandemic specifically, there are different proclamations that prevent people from areas with high rates of infection coming in. So we're not dealing with that. We're just dealing with the recession aspects of it. And so the status quo is allowing the visa programs to operate. And for example, with respect to the H-2Bs, allowing them to come in according to labor certifications, which require- So basically your response is, no, he'd have to go back to Congress. And of course- You're saying if he wanted to restrict immigration with respect to the recession? I'm not saying he would necessarily have to go back to Congress. If he could make a decision, then he might be able to make that decision. I think probably that would still run into the override issue because Congress has made this call and has not put in, it could have put in triggers or it could have put in specific provisions allowing for changes in immigration levels in the event of a recession, but it didn't do that. And it clearly knew that recessions were possible when it enacted the INA. Yes. And of course, the President's comments as to COVID-19 undercut some of the conclusions in the proclamation, but they do reference discussions with two other members of the cabinet. The proclamations do reference those. It's not clear what discussions occurred or what the content of them was or what findings were made. Those aren't in the administrative record and have not otherwise been produced or put in front of the courts here. I think the government conceded in the National Association of Manufacturers case. If you look at that opinion, the government conceded that the entire scope of the findings was within the proclamations themselves. So it's not clear that they're even, despite what the proclamation says, it's not clear that that actually occurred or that there was anything substantive there. And certainly it's not in front of the court and it was hard to use that as a ground to address. Anything further? No. Thank you. We'd ask you to enter an injunction and direct the district court to do so. Thank you, counsel. We'll take the case under advisement.
judges: Rogers, Tatel, Edwards